[Sac. No. 2383. In Bank.—September 21, 1916.]

PALERMO LAND AND WATER COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

PUBLIC UTILITY—COVENANT BY GRANTOR TO SUPPLY WATER—RATES TO BE FIXED BY PUBLIC AUTHORITY.—Covenants in deeds made by a land company, the owner of a water system for supplying water to its lands for purposes of irrigation, that it would furnish water to the lands conveyed "at such rates as may be fixed by law in the district in which said lands are situated," show the intention of the parties to the deeds that the rates to be charged should be those fixed by public authority, the fixing of which in itself implies that the service is to be that of a public utility.

ID. — RAILROAD COMMISSION — APPLICATION TO FIX RATES OF PRIVATE WATER COMPANY—CHANGE OF USE FROM PRIVATE TO PUBLIC.—The application to the railroad commission by a private water company engaged in supplying water for private use, to have its rates for water established, and an order of the commission allowing an increase in the rates theretofore in effect, operated, as against the company, as a submission to the authority of the regulating body, and was effective to change the use from a private and particular use to a public use so as to make the service and terms of delivery subject to regulation and control by public authority.

ID. — JURISDICTION OF COMMISSION — DETERMINATION OF CONTROVERTED RIGHT TO SUPPLY OF WATER.—Under the Public Utilities Act and the act of 1913 expressly authorizing the railroad commission to regulate water companies and to require them to serve additional

customers, the commission has jurisdiction to hear and determine an application for service, notwithstanding the company was in good faith disputing the applicant's right to be supplied with water.

ID.—POWER TO DETERMINE JURISDICTIONAL FACTS.—Whenever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or non-existence of the requisite facts. Its jurisdiction cannot be affected by the circumstance that these facts are denied.

ID.—COVENANT BY GRANTOR TO SUPPLY WATER—EASEMENT ON WATER SYSTEM — EASEMENT NOT LOST BY MERE DISUSE. — Where a land company, the owner of a water system for supplying water to its lands for purposes of irrigation, conveys its lands by deed containing a covenant on its part that "water shall be furnished if the grantee, his heirs or assigns shall at any time plant trees or vines or otherwise cultivate said lands," and a purchase price was paid in excess of the value of the land in reliance on the agreement to supply the necessary water, such covenant is a present grant of a water right, constituting a burden or servitude upon the water system of the grantor, and not a mere agreement to sell personal property in the future. Such easement, being acquired by grant, is not lost by mere disuse.

APPLICATION for a Writ of Certiorari to review an order of the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

McCutchen, Olney & Willard, for Petitioner.

Douglas Brookman, and Max Thelen, for Respondents.

Norman A. Eisner, for Security Investment Company.

SLOSS, J.—*Certiorari* to review an order of the railroad commission. Palermo Land and Water Company (hereinafter termed the "Palermo company") was incorporated in 1888. It acquired a tract of land, known as the Palermo Colony, situate in Butte County, and also the right to divert water from the south fork of the Feather River. It acquired or constructed canals, ditches, and the necessary appurtenances for conducting such water upon the lands in said Palermo Colony for purposes of irrigation. It has offered for sale and sold certain lands in said Palermo Colony, the conveyance in each case containing a provision for supplying water. Security Investment Company, a corporation (which·

for brevity, we shall call "investment company"), is the successor in interest of purchasers of three lots thus sold by the Palermo company. Said investment company demanded of the Palermo company that it furnish water for said lots. The demand was refused. Thereupon the investment company applied to the railroad commission for an order requiring the Palermo company to furnish said water. The application was resisted, and after a hearing an order was made requiring said Palermo company to supply the water as demanded. It is this order which is brought under review by the present proceeding.

The land owned by the investment company is described as lots 1 and 8 of block 88 and lot 1 of block 87 of subdivision No. 1 of the Palermo Citrus Tract, said tract being within the Palermo Colony. Lot 1 of block 87, containing 7.17 acres, and lot 1 of block 88, containing 8.43 acres, were conveyed to the predecessors of the investment company by the Palermo company on November 30, 1891. The deed of conveyance (in which the grantor was the party of the first part), contained the following covenant:

"And it is further agreed that if the party of the second part, or his heirs or assigns, shall at any time, plant trees or vines, or otherwise cultivate said lands, or any part thereof, the party of the first part will furnish from its ditches up to the line of said land nearest to the main or branch ditch, pipe or flume of said party of the first part, such water as may be necessary to irrigate such trees, vines or cultivated crops, not exceeding one miner's inch for every seven acres so improved or cultivated, at such rates as may be fixed by law in the district in which said lands are situated. . . ."

Lot 8 of block 88, containing 8.36 acres, was conveyed to the predecessor of the investment company on May 25, 1888. The deed, in this instance, contained a covenant like the one above quoted, except that it made the right to water conditional upon the planting of trees or vines or the cultivation of the lands at any time prior to July 1, 1889, and provided for the furnishing of water without charge for four years after the commencement of cultivation.

A portion of lot 1 in block 88, containing 4.78 acres of land, has received water for many years, and the right to water for this parcel is not in controversy. The remainder of this lot was planted to olive trees in 1913. When the

investment company demanded water for its irrigation, the demand was refused. No water has ever been delivered to this part of lot 1 of block 88. Lot 1 of block 87 has never received water from the Palermo company. It was planted to olive and peach trees in 1914, and a demand then made for water was refused. Lot 8 of block 88 was planted to olive trees prior to July 1, 1889, the date named in the deed conveying this lot, and water was furnished up to 1892. Some new trees were planted by the investment company in 1912 and 1913, and demand for water for this lot was made in 1911 or 1912 and refused. The ground upon which the Palermo company refused to furnish the water was that lot 1 of block 87 and the portion of lot 1, block 88, which had not received water had lost the right to be so supplied for the reason that there had been no planting or cultivation of said lands, and no demand for water for over twenty years after the conveyance of said lots by the Palermo company to the predecessors of the investment company. With respect to lot 8 of block 88 the claim was that while the right to have water had once attached by the planting of trees and the delivery of water, such right had been lost by a cessation of cultivation and demand for water, extending over a like period of about twenty years.

The commission found that the Palermo company had a sufficient supply of water to enable it to supply the lands of the investment company in addition to all of the other lands in the Palermo Colony which were then being irrigated. It found further that the complainant, the investment company, was entitled to receive water from the system of the Palermo company and directed that such water be supplied.

The petitioner contends that it is not a public utility and is, therefore, not subject to the jurisdiction of the commission. The Palermo company, it is claimed, has not offered its water to the public, but has merely entered into "private contractual obligations to deliver water to certain lots which it has sold with a water right." (*Burr* v. *Maclay R. W. Co.*, 160 Cal. 268, 280, [116 Pac. 715, 721].) Attention is directed to several decisions of this court holding that such disposition of water "is essentially a matter of private contract and shows no intent to create a public use." (*Thayer* v. *California D. Co.*, 164 Cal. 117, [128 Pac. 21]; *Burr* v. *Maclay R. W. Co.*, 160 Cal. 268, [116 Pac. 715]; *Hildreth* v. *Montecito*

*etc. Co.,* 139 Cal. 22, [72 Pac. 395] ; *Barton* v. *Riverside W. Co.,* 155 Cal. 509, 518, [23 L. R. A. (N. S.) 331, 101 Pac. 790].) It is further argued that if our statutory provisions (Stats. 1913, p. 84; Stats. 1915, p. 1273) are to be construed as declaring that water companies of this character are public utilities, such statutes are in violation of both the federal and state constitutions. We do not, however, feel called upon to go into the constitutional questions thus suggested, for the reason that we feel satisfied that, without regard to statutory provisions, the conduct of the Palermo company was such as to take its operations out of the category of a private use as defined by *Thayer* v. *California Development Co.* and like cases. In the first place the covenants providing for the furnishing of water to land sold by the Palermo company provided that the water was to be supplied "at such rates as may be fixed by law in the district in which said lands are situated." In the very inception of the right, therefore, it appears that the parties contemplated that the rates to be charged should be those fixed by public authority. The fixing of rates by public authority in itself implies that the service is to be that of a public utility. The right to regulate the price of a service exists only when such service is one affected by a public interest.

But, apart from this consideration, it appears that in December, 1912, the Palermo company applied to the railroad commission to have its rates for water established and that the commission made its order allowing an increase in the rates theretofore in effect. (Opinions and Orders of the Railroad Commission, vol. III, p. 1247). The case, therefore, falls directly within the doctrine of *Franscioni* v. *Soledad Land & Water Co.,* 170 Cal. 221, [149 Pac. 161], where we held that as against the water company such submission to the authority of the regulating body was effective to "change the use from a private and particular use to a public use so as to make the service and terms of delivery subject to regulation and control by public authority." No valid distinction can be drawn between the Franscioni case and the one before us.

The petitioner's next contention is that the railroad commission was without jurisdiction, because the Palermo company was in good faith disputing the right of the investment company to have water supplied to its lands. The argument

is that the railroad commission is primarily an administrative body, and that it has no authority to act judicially in determining the existence of a disputed right.  We see no force in this contention.  By the Public Utilities Act, [Stats. 1911, (Ex. Sess.) p. 18], the commission is vested with power and jurisdiction "to supervise and regulate every public utility in the state and to do all things, whether herein specifically designated or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction."  (Sec. 31.)  The act of 1913 (Stats. 1913, p. 84) expressly authorizes the commission to regulate water companies and to require them to serve additional consumers.  We may concede, for the purposes of the discussion, that the authority to order service does not include authority to compel a water company to supply water to persons or lands not within the scope of the dedication which has been made.  Nevertheless, on an application for an order requiring service, the commission must necessarily determine, as a preliminary issue, whether the applicant is within the class of those entitled to the service.  Wherever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or nonexistence of the requisite facts.  (11 Cyc. 701; *In re Grove Street,* 61 Cal. 438, 453.)  Its jurisdiction cannot be affected by the circumstance that these facts are denied.

We come to the final contention of the petitioner, which is that the investment company was not, in law and fact, entitled to have water supplied to its lands.  The argument is that the only dedication to public use was one limited by the terms of the covenant contained in the deeds executed by the Palermo company.  The deeds conveying lot 1 of block 87 and lot 1 of block 88 provide that "water shall be furnished if the grantee, his heirs or assigns shall at any time plant trees or vines or otherwise cultivate said lands."  The position taken with respect to the effect of this clause is thus stated in the opening brief: "Petitioner's offer that if at any time the land is placed under cultivation petitioner will supply it with water cannot be construed as running in perpetuity.  It must be held to be limited to a reasonable time."  Cases are cited declaring that where no time is specified the law implies a reasonable time, and that the use of the phrase "at any time" will not prevent the implication.  The sound-

CLXXIII Cal.—25

ness of the rule thus declared is not open to question. We think, however, that it is not applicable to the situation here presented. The cases cited had to do with contracts giving a party the right, at his election, to claim a privilege. Here we have something more. The findings of the commission show that the Palermo company sold its land at prices ranging from fifty dollars to one hundred dollars per acre in excess of the value of the land without water, and that the additional price was paid in reliance on the agreement of the company to supply the necessary water. It can hardly be supposed to have been in the contemplation of a grantee taking land under these conditions that the water right for which he had thus paid would be forfeited to the grantor because of his failure to make use of it within any given time. The covenants in the deeds were not a mere agreement to sell personal property in the future. They were a present grant of a water right, which constituted a burden or servitude upon the water system of the grantor. (*Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716, 725, [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Southern Pacific Co.* v. *Spring Valley Water Co., ante,* p. 291, [159 Pac. 865].) The grantees thus being the owners of an interest in the water right, the case falls directly under the authority of *Copeland* v. *Fairview Land Co.,* 165 Cal. 148, [131 Pac. 119]. As is there pointed out, an easement acacquired by grant is not lost by mere disuse. (*Smith* v. *Worn,* 93 Cal. 212, [28 Pac. 944]; *Currier* v. *Howes,* 103 Cal. 431, [37 Pac. 521]; *People* v. *Southern Pacific Co.,* 172 Cal. 692, [158 Pac. 180].) In the Copeland case the court says that where one acquiring a water right sells an interest in it to another, and thereafter continues to divert the water himself for the vendee, the fact that the vendee does not demand or use the water he has bought will not "forfeit his right thereto to the vendor who has in the meantime continued the diversion, unless such vendor in some manner informs the vendee that such forfeiture will be claimed because of nonuse, or asserts it against him by some hostile act. Mere failure to take and use the water for which he has, at the time, no need, will not forfeit the right to the vendor, in such a case." (*Copeland* v. *Fairview Land etc. Co.,* 165 Cal. 166, [131 Pac. 126].) The Palermo company never gave the investment company or its predecessors any notice that it regarded the right to water as terminated until 1912, about two years be-

fore the proceeding was instituted before the railroad commission. The right was, of course, not lost by limitation during that period. We conclude, therefore, that there is no merit in the claim that the investment company lost its right to demand water, either by reason of its failure to plant trees and demand water for lot 1, block 87, and lot 1, block 88, or by reason of its cessation of cultivation and of demand for water for lot 8 of block 88.

The order is affirmed.

Shaw, J., Melvin, J., Henshaw, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.